UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| ALTON CROMARTIE, | : | Case No. 2:23-cv-1802 |
| | : | |
| Plaintiff, | : | District Judge James L. Graham |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| DR. ARTHUR HALE, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

ORDER AND
REPORT AND RECOMMENDATION

Plaintiff, a prisoner at the Pickaway Correctional Institution (PCI) in Orient, Ohio, has filed a pro se civil rights complaint, pursuant to 42 U.S.C. § 1983,[1] and an amended complaint seeking to include an additional claim under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (ADA).[2] (*See* Docs. 2, 4). Plaintiff's motion to amend the complaint to include the additional ADA claim (Doc. 4) is hereby **GRANTED**.[3] The Court **DIRECTS** the **Clerk of Court** to refile the amended complaint (Docs. 2, 4) together as one document and to docket them as the First Amended Complaint. By separate Order, plaintiff has been granted leave to proceed *in forma pauperis*.

---

[1]"Section 1983 provides a private cause of action for the deprivation, under color of state law, of 'rights . . . secured by the Constitution and laws.'" *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 624 (1979) (Powell, J., concurring).

[2]Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[3]Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course within 21 days of serving it or within "21 days after service of a motion under Rule 12(b)." Fed. R. Civ. P. 15 (a)(1)(A)-(B). All other amendments must be made with the consent of the opposing party or leave of court. Fed. R. Civ. P. 15(a)(2). Here, the defendants have yet to be served in the case, allowing amendment of the complaint to be made as a matter of course.

This matter is currently before the Court for a *sua sponte* review of the complaint, as amended, to determine whether the complaint or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b). This matter is also before the Court on "Plaintiff's Motion to Access Defendant's Law Library" (Doc. 11), which the undersigned Magistrate Judge construes as a motion for preliminary injunction.

I. **The Amended Complaint**

A. *Legal Standard*

Because plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity" and is proceeding *in forma pauperis*, the Court is required to conduct an initial screen of his complaint. 28 U.S.C. § 1915A(a) and 28 U.S.C. § 1915(e)(2). The Court must dismiss the complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a

complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a *pro se* complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]). Even with such a liberal construction, a *pro se* complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

B. *Allegations*

In the amended complaint, plaintiff brings claims against the following defendants, each sued solely in their official capacities: Dr. Arthur Hale (PCI Chief Medical Officer), Mary Roush (PCI Medical Operations Manager), Ashley Orsbone (PCI Healthcare Administrator), and Marilyn Rodriguez (PCI Diet Tech.). (Docs. 1, 4).

Plaintiff alleges that he has been diagnosed with Type II diabetes and Legg-Calve-Perthes disease, a bone disease that affects blood supply to his hip and upper thigh. (Doc. 2, at PageID 8). Plaintiff alleges that he also suffers from severe, chronic gastroparesis, which is "an incurable illness defined as paralysis of the stomach that prevents and slows such processes as digestion, absorption of nutrients, breaking down and churning of foods subsequently to be passed from the stomach into the bowels." (Doc. 2, at PageID 9). Plaintiff alleges that

3

"[s]ymptoms associated with gastroparesis are nausea, vomiting, and stomach pains." (*Id*.). Plaintiff asserts that, as a result of his gastroparesis, he is unable to eat solid foods. (*Id*.).

Plaintiff was housed at the Franklin Medical Center in Columbus, Ohio from 2012 to 2021. (Doc. 2, at PageID 9; Doc. 4, at PageID 41). Plaintiff states that the Franklin Medical Center is operated by the Ohio Department of Rehabilitation and Correction (ODRC) to house "the most serious and infirm incarcerated individuals in the state of Ohio." (Doc. 4, at PageID 41). Plaintiff was housed there to receive "total parenteral nutrition (TPN) which is administered via an electronic intravenous pump twelve hours a day." (Doc. 4, at PageID 42).

In May 2021, non-defendant[4] medical staff at the Franklin Medical Center determined that plaintiff's condition had improved to the point that he could be transferred to PCI, which contains the Frazier Health Center, "a medical step down from Franklin Medical Center." (Doc. 4, at PageID 42). Plaintiff was transferred to PCI on May 19, 2021, and suffered "multiple bouts with sepsis from May 19, 2021 to August 1, 2021." (Doc. 4, at PageID 42). Plaintiff required hospitalization at the Ohio State University Medical Center from August 14 to August 16, 2021, where doctors discontinued plaintiff's TPN and inserted a jejunal feeding tube.

Plaintiff alleges that the August 16, 2021 hospital discharge summary ordered that he receive Kate Farms formula at a rate of 60 ml/hr via an electric feeding pump. Plaintiff alleges that he received an alternative formula ("Two Cal") at the prescribed rate from August 17, 2021 to December 20, 2022. (Doc. 4, at PageID 43). However, on December 20, 2022, defendant Roush allegedly informed plaintiff that defendant Orsbone saw plaintiff making several trips to

---

[4]To the extent that plaintiff asserts claims against non-defendants, those claims are subject to dismissal. *See Wilkins v. S. Ohio Corr. Facility*, No. 1:22-CV-18, 2022 WL 2072907, at *2 n.2 (S.D. Ohio June 9, 2022), *report and recommendation adopted*, No. 1:22CV18, 2022 WL 3021817 (S.D. Ohio July 29, 2022).

4

the microwave and that defendant Hale had discontinued his tube-feed order.  (Doc. 2, at PageID 10; Doc. 4, at PageID 43).

Plaintiff alleges that although his tube-feed order was discontinued, neither defendant Hale nor defendant Rodriguez entered a diet order for him, which resulted in him receiving no nutrition for sixteen days—from December 22, 2022 to January 5, 2023.  (Doc. 2, at PageID 10-11).  Plaintiff alleges that he submitted a health services request on December 27, 2022, informing medical staff that his weight had dropped over 15 pounds in six days, but his request was ignored.  (Doc. 2, at PageID 11; *see also* Doc. 2-3, at PageID 32).[5]

During this same time frame, defendant Hale placed plaintiff on commissary restriction.  The lack of access to food required plaintiff to rummage through the garbage at night in search of "any liquid or soft food that appeared untouched."  (Doc. 2, at PageID 12).  As a result, Plaintiff suffered from "chronic headaches, dizziness, fatigue, loss of concentration, stomach pains, backaches, muscle spasms, blurry vision, cognitive defects such as nightmares about food, and exacerbating his mental illness[.]"  (Doc. 2, at PageID 14).  Plaintiff was also denied access to recreational services due to weakness.  (Doc. 4, at PageID 44).  Plaintiff alleges that defendants Hale, Orsbone, and Roush conspired to discontinue his tube feedings in order to discriminate against him and "discharge [him] from long term care into general population[.]"  (Doc. 4, at PageID 48).

On January 4, 2023, plaintiff's feeding tube began leaking bile.  Four days later, he was admitted to the Ohio State University Medical Center.  (Doc. 4, at PageID 45).  Plaintiff alleges that at the time of his admission, "his glucose was abnormally low resulting in [him] receiving intravenously glucose and other electrolytes twenty-four hours a day up and until [his] discharge

---

[5]Plaintiff also alleges that his daily weight was recorded in his electronic health record.  (Doc. 2, at PageID 11).

5

on January 10, 2023 due to dehydration." (Doc. 2, at PageID 17). Doctors replaced his jejunum tube and resumed tube feedings. (Doc. 2, at PageID 17). Plaintiff's discharge summary included "an order and recommendation . . . for Defendants Arthur Hale, Mary Roush, and Marilyn Rodriguez to resume Plaintiff's tube feed at a rate of 45 ml/hr." (Doc. 2, at PageID 17).

However, defendants Hale and Rodriguez allegedly discontinued the order to resume his tube feedings on January 11, 2023, without consulting hospital physicians. (Doc. 2, at PageID 18). On January 13, 2023, defendant Hale allegedly prescribed a "clear diet" for plaintiff. (Doc. 2, at PageID 18). On the same date, defendant Rodriguez recommended that plaintiff receive the "Two Cal" supplement twice a day by mouth. The next day, however, a non-defendant nurse noted that plaintiff was unable to tolerate the "Two Cal" formula by mouth and had "nausea and vomiting." (Doc. 2, at PageID 18). On January 19, February 2, and March 3, 2023, defendant Hale documented plaintiff's complaints of nausea and vomiting in his electronic health record. (Doc. 2, at PageID 18). On March 8, 2023, defendant Rodriguez noted that plaintiff "was throwing [the "Two-Cal" formula] back up most of the time." (Doc. 2, at PageID 19).

Plaintiff was again hospitalized from March 27 to April 6, 2023, after suffering a bowel obstruction and losing 31 pounds. (Doc. 2, at PageID 19-20). When he was discharged, Ohio State University Medical Center physicians mandated that his tube feedings be resumed. Plaintiff alleges that were it not for this mandate, defendants "would have continued to deny [him] this lifesaving medical treatment and services." (Doc. 4, at PageID 50).

For relief, plaintiff seeks solely monetary damages. (Doc. 2, at PageID 23; Doc. 4, at PageID 51).

*C.     Analysis*

Liberally construing plaintiff's complaint, as it is required to do, the Court understands plaintiff to be asserting three claims: (1) deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution against each of the defendants in their official capacities; (2) failure to provide reasonable accommodations in violation of the ADA against each of the defendants in their official capacities; and (3) conspiracy to interfere with ADA rights in violation of 42 U.S.C. § 1985[6] against defendants Hale, Roush, and Orsbone in their official capacities.

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the Court concludes that plaintiff may proceed at this juncture against each of the defendants,[7] in their official capacities, for compensatory damages for allegedly failing to provide reasonable accommodations to plaintiff in violation of the ADA. *See, e.g., Larson v. Eppinger*, No. 2:20-CV-4997, 2021 WL 2659998, at *6 (S.D. Ohio June 29, 2021) (concluding that prisoners "can maintain a 'reasonable modification' claim under Title II independent from a claim of intentional discrimination") (citations omitted); *cf Miller v. Aranas,* No. 317CV00068, 2021 WL 1397232, at *15 (D. Nev. Feb. 5, 2021), *report and recommendation adopted*, No.

---

[6]Although plaintiff does not indicate the statutory basis for his conspiracy claim, the Court understands it to be brought under 42 U.S.C. § 1985(3), which "provides a remedy for a conspiracy to interfere with civil rights." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 139 (11th Cir. 2011).

[7]"The proper defendant under a Title II claim is the public entity or an official acting in his official capacity." *Mitchell v. Horton*, No. 2:18-CV-216, 2019 WL 1025562, at *5 (W.D. Mich. Mar. 4, 2019) (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002)). Title II of the ADA does not provide a private right of action against a public employee acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Further, "a private corporation is not a public entity merely because it contracts with a public entity to provide some service." *Jones v. Centurion*, No. 1:22-CV-00024, 2022 WL 9495987, at *7 (M.D. Tenn. Oct. 14, 2022) (quoting *Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015)). It is unclear whether the defendants are employed by the ODRC or are contract medical care providers from a private company. Accordingly, at this juncture, plaintiff may proceed for further development with his ADA claims against each of the defendants in their official capacities.

317CV00068, 2021 WL 1041912 (D. Nev. Mar. 17, 2021) (noting that "some courts have identified ADA violations 'where the denial of medical care is so extreme as to suggest discriminatory refusal to accommodate a disability-related need[.]'") (citations omitted). However, for the reasons set forth below, the undersigned Magistrate Judge recommends that plaintiff's remaining claims be dismissed for failure to state a claim upon which relief can be granted. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

1. ***Punitive Damages***

To the extent that plaintiff seeks punitive damages as to his ADA claims, such damages are unavailable. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA[.]").[8] The undersigned therefore recommends that any claims for punitive damages be dismissed with prejudice.

2. ***Eighth Amendment Claim***

Plaintiff has sued defendants solely in their official capacities and seeks monetary damages as his sole form of relief. It is unclear whether defendants are employed by the ODRC or a private company.[9] Regardless, the undersigned recommends that plaintiff's Eighth Amendment claim for deliberate indifference to medical need be dismissed without prejudice.

---

[8] The Court expresses no opinion at this juncture as to the applicability of sovereign immunity to plaintiff's ADA claims to the extent that plaintiff seeks compensatory damages. *See, e.g., Meeks v. Schofield*, No. 3:12-MC-00035, 2012 WL 1934416, at *3 (M.D. Tenn. May 29, 2012) (allowing ADA compensatory damages claims to proceed at the screening stage).

[9] According to the ODRC's website, medical care at its facilities is generally provided "by a combination of civil service and contract medical care professionals." (Viewed at: https://drc.ohio.gov/systems-and-services/4-medical-services).

If defendants are employed by the ODRC, plaintiff's Eighth Amendment claim is barred by the Eleventh Amendment. Absent an express waiver, the Eleventh Amendment bars suits against a state in federal court. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (Congress did not intend to "disturb the States' Eleventh Amendment immunity" by passing § 1983). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460-62 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002).

Here, if defendants are employed by the State of Ohio, then a suit against them in their official capacities would, in reality, be an action against the State of Ohio. *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Because plaintiff has sued defendants solely in their official capacities, any individual ODRC defendants are immune from liability on plaintiff's Eighth Amendment claim.

If defendants are employed by a private company and contracted to provide medical services, plaintiff's Eighth Amendment claim is likewise subject to dismissal. An official capacity claim against a contract medical provider is effectively against the company. *See Jones*

9

*v. Centurion*, No. 1:22-CV-00024, 2022 WL 9495987, at *5 (M.D. Tenn. Oct. 14, 2022); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). A higher standard applies to Section 1983 claims asserted against private entities:

> For [a private company] to be liable under Section 1983, the plaintiff must allege that there is a direct causal link between a policy or custom of [the company] and the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In other words, [the company] may be liable under Section 1983 "if its official policies or customs resulted in injury to the plaintiff." *O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014); *see also Mason v. Doe*, No. 3:12CV-P794-H, 2013 WL 4500107, at *1 (W.D. Ky. Aug. 21, 2013) (collecting cases) ("a private corporation may be liable under § 1983 when an official policy or custom of the corporation causes the alleged deprivation of a federal right").

Here, plaintiff makes only a conclusory assertion that defendants "took an action pursuant to an unconstitutional government policy or custom, or . . . possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner." (Doc. 2, at PageID 14-15). Plaintiff fails to allege specific facts "connecting the [alleged violation of his civil rights] to specific policies or customs." *Rhinehart v. Scutt*, No. 2:11-CV-11254-DT, 2014 WL 5361936, at *17 (E.D. Mich. June 20, 2014), *report and recommendation adopted in part*, *rejected in part on other grounds*, No. 11-CV-11254, 2014 WL 5361939 (E.D. Mich. Oct. 21, 2014) (citing cases). Plaintiff has therefore failed to state an Eighth Amendment official-capacity claim under *Monell*, 436 U.S. at 691.

For these reasons, the undersigned recommends that Plaintiff's Eighth Amendment claim against defendants be dismissed without prejudice.

### 3. *ADA Conspiracy Claim*

Plaintiff's ADA conspiracy claim under Section 1985 should be dismissed with prejudice. A "plaintiff cannot assert civil rights claims premised on alleged violations of Title II of the ADA because the ADA has its own comprehensive remedial schemes for such violations." *Serris v. Chastaine*, No. 222CV0434, 2022 WL 2133900, at *6 (E.D. Cal. June 14, 2022) (dismissing a plaintiff's § 1985 claim for conspiracy to violate the ADA) (citing *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002)); *Sauter v. State of Nevada*, No. 97-15795, 1998 WL 196630, at *1 (9th Cir. 1998) (holding that the plaintiff's ADA conspiracy claim was "not cognizable under § 1985 . . . because that section cannot serve as a vehicle to enforce statutory rights when the statute in question has its own remedial structure") (citing *Great Am. Fed. Sav. & Loan Assn. v. Novotny*, 442 U.S. 366 (1979)). The undersigned therefore recommends that Plaintiff's ADA conspiracy claim be dismissed with prejudice.

In sum, plaintiff may proceed at this juncture against defendants for compensatory damages in their official capacities for the alleged failure to provide reasonable accommodations to plaintiff in violation of the ADA. However, for the above-stated reasons, the undersigned recommends that plaintiff's remaining claims be dismissed.

The Court notes that plaintiff has failed to provide summons or U.S. Marshal forms for service of process on defendants. It is therefore **ORDERED** that plaintiff, **within thirty (30) days** of the date of this Order, submit a completed summons and U.S. Marshal form for each of the defendants, namely, Dr. Arthur Hale, Mary Roush, Ashley Orsbone, and Marilyn Rodriguez. **Plaintiff is advised that failure to comply with this Order may result in the dismissal of this action for want of prosecution.**

## II. Motion To Access Defendant's Law Library (Doc. No. 11)

As noted above, plaintiff also seeks preliminary injunctive relief in his Motion to Access Defendant's Law Library (Doc. No. 11). Specifically, Plaintiff asserts that he is being denied access to the PCI law library in retaliation for bringing the instant lawsuit. (*Id.*)

When deciding whether to issue a preliminary injunction, this Court must balance four factors: (1) whether the party seeking the injunction has shown a substantial likelihood of success on the merits; (2) whether the party seeking the injunction will suffer irreparable harm absent the injunction; (3) whether an injunction will cause others to suffer substantial harm; and (4) whether the public interest would be served by a preliminary injunction. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014); *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). *See also Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (applying the same four-factor analysis to a motion for temporary restraining order).

The four factors are not prerequisites but must be balanced as part of a decision to grant or deny injunctive relief. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). "[A] district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003), *abrogated on other gds. by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). "The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *S. Glazer's Distributors of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 848-49 (6th Cir. 2017) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). Accordingly, "a party moving for a preliminary

injunction must necessarily establish a relationship between the injury claimed and the party's motion." *Devose v. Herrington,* 42 F.3d 470, 471 (8th Cir. 1994) (per curiam).

The issues raised in the Motion to Access Defendant's Law Library are largely unrelated to the merits of the claims presented in the amended complaint. Instead, they concern new claims of retaliation based on alleged incidents that occurred at PCI after plaintiff commenced this action. These new allegations are substantively different from the claims of medical indifference and failure to accommodate his medical needs raised in his amended complaint.

A motion for preliminary injunctive relief is not the proper method "to use in an attempt to address other issues unrelated to [an] original complaint." *Hendricks v. Hazzard*, No. 2:11-cv-399, 2013 WL 2635729, at *3 (S.D. Ohio June 12, 2013) (Report and Recommendation) (Kemp, M.J.), *adopted,* 2013 WL 5944082, at *4 (S.D. Ohio Nov. 5, 2013). "Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit." *Devose*, 42 F.3d at 471.

Accordingly, it is **RECOMMENDED** that plaintiff's Motion to Access Defendant's Law Library (Doc. 11) be **DENIED.**

## IT IS THEREFORE ORDERED THAT:

1. Plaintiff's motion to amend the complaint to include the additional ADA claim (Doc. 4) is **GRANTED**. The Court **DIRECTS** the **Clerk of Court** to refile the amended complaint (Docs. 2, 4) together as one document and to docket them as the First Amended Complaint.

2. Within **thirty (30) days** of receipt of this Order, plaintiff is **ORDERED** to submit to the Court completed summons and United States Marshal forms for each of the defendants.

3. The Clerk of Court is **DIRECTED** to send to plaintiff a summons form and a United States Marshal form for this purpose. Upon receipt of the completed summons and United States Marshal forms, the Court **ORDERS** service of process by the United States Marshal in this case as directed by plaintiff.

4. Plaintiff shall inform the Court of any changes to his address during the pendency of this lawsuit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The complaint be **DISMISSED** with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), **with the exception of** plaintiff's claims against the defendants in their official capacities for compensatory damages for the alleged failure to provide reasonable accommodations to plaintiff in violation of the ADA.

2. Plaintiff's Motion to Access Defendant's Law Library (Doc. 11) be **DENIED.**


February 5, 2024                                 /s/ Caroline H. Gentry
                                                 Caroline H. Gentry
                                                 UNITED STATES MAGISTRATE JUDGE


### Notice of Procedure on Objections

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within FOURTEEN days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to SEVENTEEN days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the

objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within FOURTEEN days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).